

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-24-2003

# USA v. Terlingo

Precedential or Non-Precedential: Precedential

Docket 02-1640

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"USA v. Terlingo" (2003). *2003 Decisions.* Paper 577.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/577

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 23, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

Nos. 02-1640, 02-1641 and 02-1642

————————

UNITED STATES OF AMERICA

v.

DOMENICK TERLINGO, TARA TERLINGO, and
DOMENICK L. TERLINGO

Domenick Terlingo, Appellant in No. 02-1640
Tara Terlingo, Appellant in No. 02-1641
Domenick L. Terlingo, Appellant in
No. 02-1642

————————

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. Nos. 99-525-06/07/08)
District Judge: Honorable Jan E. DuBois

————————

Submitted Under Third Circuit LAR 34.1(a)
January 21, 2003

Before: BECKER, *Chief Judge*, NYGAARD and
AMBRO, *Circuit Judges*.

(Filed: April 23, 2003)

F. EMMETT FITZPATRICK, ESQUIRE
NIALENA CARVASOS, ESQUIRE
F. Emmett Fitzpatrick, P.C.
926 Public Ledger Building
610 Chestnut Street
Philadelphia, PA 19106

*Attorneys for Appellants*

PATRICK L. MEEHAN
United States Attorney
LAURIE MAGID
Deputy United States Attorney
 for Policy and Appeals
ROBERT A. ZAUZMER
Assistant United States Attorney
Senior Appellate Counsel
THOMAS M. ZALESKI
Assistant United States Attorney
Office of the United States Attorney
 for the Eastern District of
 Pennsylvania
615 Chestnut Street
Philadelphia, PA 19106

*Attorneys for Appellee*

---

## OPINION OF THE COURT

---

BECKER, *Chief Judge*:

This is a sentencing appeal brought by defendants Domenick Terlingo, Tara Terlingo, and Domenick L. Terlingo, who were convicted by a jury of conspiracy to transport stolen vehicles in interstate commerce. The Terlingos assert that the order of restitution imposed by the District Court is invalid because it was imposed more than ninety days after sentencing, in contravention of the following provision of 18 U.S.C. § 3664(d)(5):

> If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, *and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing*. (Emphasis added).

The Government submits that the District Court was correct to rule that because the delay was the fault of the defendants it would equitably toll the time-bar and allow the hearing to take place outside the ninety-day limit. This appeal raises a question of first impression for this Court:

is the 18 U.S.C. § 3664(d)(5) time limit subject to equitable tolling, and if so, under what circumstances? Because we conclude that this time limit is subject to equitable tolling when the delay is caused in significant part by the defendant, we will affirm the judgment of the District Court.

I.

Between March 1995 and May 1997, the Terlingos participated in a scheme to steal and sell luxury automobiles after changing their vehicle identification numbers. In December 2000, a jury convicted the Terlingos of one count of conspiracy to transport stolen vehicles in interstate commerce in violation of 18 U.S.C. § 371. On October 9, 2001, the District Court sentenced Domenick Terlingo to eighteen months imprisonment and three years supervised release, and on October 11, 2001 it sentenced both Tara and Domenick L. Terlingo to three years probation and six months house arrest.

At the request of the Government, because it needed more time to obtain necessary documents, the District Court did not address the issue of restitution at the defendants' sentencing hearings but rather delayed entry of a restitution order pursuant to 18 U.S.C. § 3664(d)(5). On December 21, 2001, the District Court ordered counsel for both parties to report jointly to the Court on the status of the restitution issue on or before January 7, 2002, a date ninety days after Domenick Terlingo's sentencing. In a December 28, 2001 letter to the District Court, the Government requested that the Court schedule the restitution hearings for Domenick, Tara, and Domenick L. on the 7th, 8th, and 9th of January, 2002, respectively. In response, the District Court scheduled a hearing for all three Terlingos on January 7, 2002.

On January 4, 2002, however, the defendants moved for a continuance of the restitution hearing, representing that they were unprepared to go forward because the Government had not timely provided them with the necessary discovery. In addition, defendants' counsel informed the District Court that they would be unable to attend the January 7th hearing because they were

scheduled for trial on another matter in the Eastern District of Pennsylvania. The Government opposed this request for a continuance, but the District Judge granted the motion, apparently to accommodate his District Court colleague's trial schedule.

The District Court did not hold the restitution hearing until February 25, 2002, at the conclusion of which it ordered Domenick Terlingo to pay $46,534.16, and both Tara and Domenick L. Terlingo to pay $5,000 in restitution. Because this hearing took place outside the ninety-day period specified by § 3664(d)(5), the defendants appealed.

## II.

### A.

Under the plain language of § 3664(d)(5), the district court "shall" set a date for the final determination of the victim's losses to occur within ninety days of sentencing. After argument by counsel for the defendants and the government on the applicability of the ninety-day time bar, the District Court rejected the defendants' argument and made the following findings:

> I think that there is absolutely no bad faith on the part of the defense. I think the government missed a deadline, almost missed a deadline. If they had really missed the deadline, if I hadn't scheduled a hearing for January 7th, I might rule differently, but I'm ruling now, taking *Stevens*, *U.S. v. Stevens* and extending it just one step further, I scheduled a restitution portion of the sentencing in this case for January 7th, I continued that restitution hearing at the request of the defendants. They had a legitimate request, the notice was short. It was short because the government didn't request the hearing and they failed to respond to an order directing that they submit a status report in 60 days, but in any event, the hearing would have gone forward on January 7th, within the ninety days, had the defense counsel not been on trial.

> And, under those circumstances, again, absolutely no bad faith, I'm taking the *Stevens* rationale and I'm

> ruling that because the continuance was not the fault of the Government, it was at the request of the defense, a legitimate request, I am not going to bar the Government from presenting restitution arguments and from seeking a restitution order in this case.

As we read the record, these findings are supported. The defendants argue that the entire fault for the delay in the issuance of a restitution order lay with the government because the government failed to turn over discovery in a timely fashion before the date of the scheduled hearing. The District Court's findings, which, as noted above, are supported, undermine that contention. This is not the end of our inquiry, however; we must still determine whether the District Court erred in determining that the § 3664(d)(5) time-bar is subject to equitable tolling, and if it was correct in so finding, whether it was also correct in concluding that equitable tolling was appropriate under the facts of this case.

We begin with the threshold question whether the time limit of § 3664 (d)(5) is subject to equitable tolling at all. Two Courts of Appeals have answered this question in the affirmative. In *United States v. Stevens*, 211 F.3d 1 (2d Cir. 2000), relied upon by the District Court, the Court of Appeals for the Second Circuit concluded that the time limit must be tolled when the restitution hearing was delayed due to the bad faith tactics of the defendant. Similarly, in *United States v. Dando*, 287 F.3d 1007, 1011 (10th Cir. 2002), the Court of Appeals for the Tenth Circuit plainly stated that the "statute's time prescriptions . . . are subject to equitable tolling" and cited to *Stevens* and to *Carlisle v. United States*, 517 U.S. 416, 435 (1996)(Ginsburg, J., concurring)(observing that "limitations periods generally" are subject to equitable tolling).

In addition, in *United States v. Maung*, 267 F. 3d 1113, 1122 (11th Cir. 2001), the Court of Appeals for the Eleventh Circuit implied that the limit is tollable because "[a]llowing the defendant's own bad faith delay to foreclose the entry of a restitution order could conceivably put restitution in some cases in the defendant's own discretion." The Court was therefore unwilling to say "that the 90-day limitation is inexorable and can never be

equitably tolled. We have no occasion to decide that issue in this case, anyway." *Id.*

B.

The Supreme Court has not directly addressed the issue at bar, nor has the Court laid down any hard and fast rules for determining what kinds of statutes are subject to equitable tolling. It is possible, however, to glean some guidance on the issue from a handful of Supreme Court decisions. In addition to Justice Ginsburg's statements on the matter in *Carlisle, supra,* the Supreme Court spoke in some depth on the application of equitable tolling in certain situations in *Irwin v. Department of Veterans Affairs,* 498 U.S. 89 (1990). In that case, the Court noted that "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.' Indeed, we have held that the statutory time limits applicable to lawsuits against private employers under Title VII are subject to equitable tolling." *Id.* at 95 (internal citations omitted). The Court concluded that, in the context of a Title VII action against the government, "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95-96. This language does not subsume the situation before us, of course, but it surely indicates general approval of the widespread applicability of equitable tolling principles.

The Supreme Court's discussion of equitable tolling in *United States v. Brockamp,* 519 U.S. 347 (1997), also provides guidance as to what kinds of statutes are subject to equitable tolling. In *Brockamp,* the Court determined that the time limits for filing tax refund claims set forth in § 6511 of the Internal Revenue Code were not subject to equitable tolling. The Court's reasoning is instructive, so we rescribe it at length:

> Section 6511 sets forth its time limitations in unusually emphatic form. Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied "equitable tolling" exception. See, *e.g.,* 42 U.S.C.

§ 2000e-16(c) (requiring suit for employment discrimination to be filed "[w]ithin 90 days of receipt of notice of final [EEOC] action . . ."). But § 6511 uses language that is not simple. It sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions. Moreover, § 6511 reiterates its limitations several times in several different ways. . . .

In addition, § 6511 sets forth explicit exceptions to its basic time limits, and those very specific exceptions do not include "equitable tolling." See § 6511(d) (establishing special time limit rules for refunds related to operating losses, credit carrybacks, foreign taxes, self-employment taxes, worthless securities, and bad debts) . . . .

To read an "equitable tolling" provision into these provisions, one would have to assume an implied exception for tolling virtually every time a number appears. To do so would work a kind of linguistic havoc. Moreover, such an interpretation would require tolling, not only procedural limitations, but also substantive limitations on the amount of recovery — a kind of tolling for which we have found no direct precedent.

*Id.* at 350-52.

In contrast to the IRS provision discussed in *Brockamp,* the time-limit of § 3664(d)(5) looks very much like that of 42 U.S.C. § 2000e-16(c), which the Court pointed to as an example of a statute subject to equitable tolling; and § 3664(d)(5) does not remotely resemble the complicated tax time limits the *Brockamp* Court held were not subject to equitable tolling. 18 U.S.C. § 3664(d)(5)'s ninety-day requirement is not set forth "in unusually emphatic form" or in a "highly detailed technical manner," but rather "use[s] fairly simple language." In addition, there are no built-in time limit exceptions to § 3664(d)(5). In light of Justice Ginsburg's observation that "limitations periods generally" are subject to equitable tolling, *Carlisle,* 517 U.S. at 435 (Ginsburg, J., concurring), and the fact that the

time-limit at issue here is nearly identical to one that the *Brockamp* Court stated could be "plausibly read as containing an implied 'equitable tolling' exception," we conclude that the ninety-day time limit of § 3664(d)(5) is subject to equitable tolling. *Brockamp*, 519 U.S. at 350.

## C.

This conclusion is buttressed by looking to the purpose of the ninety-day time limit. As the Court of Appeals for the Second Circuit concluded in *Stevens*, it appears that the time limit was not created for the benefit of the convicted criminal, but to protect the victims of the crimes of which he has been convicted. Senate Report No. 104-179, which was adopted as the Conference Report for the Victim Restitution Act of 1995, stated that "[t]he committee . . . intends that . . . the defendant's assets and ability to pay be subject to strict review by the court. In particular, the committee is concerned that defendants not be able to fraudulently transfer assets that might be available for restitution." On the basis of this language, the *Stevens* Court concluded that "[i]n our view, the 90-day limit on the entry of a restitution order is more consistent with Congress's concerns about preventing the dissipation of a defendant's assets, than with protecting a defendant from a drawn-out sentencing process," *Stevens*, 211 F.3d at 4 n.2, and that "Congress could not have intended to permit offenders to subvert the VWPA by using dilatory maneuvering to defeat a sentence of restitution." *Id.* at 4.[1]

On the basis of this theory, it makes sense to grant equitable tolling, on behalf of the government representing the victims, if the defendant has, in bad faith, delayed to the point where the restitution order is untimely. A time limit that is intended to benefit the victims should not fall prey to the delaying tactics of a defendant who has every

---

1. The *Maung* Court cautioned that "we may only look to legislative history if [the] plain meaning produces 'a result that is not just unwise but is clearly absurd.'" *Maung*, 267 F. 3d at 1121. The Court also acknowledged, however, that allowing the defendant to cause the delay of the restitution order past the 90-day limit might produce such an absurd result.

incentive to ensure that the restitution order does not fall within the 90-day period. We note too that, as the Court explained in *Brice v. Secretary of Health and Human Services*, 240 F.3d 1367, 1373 (Fed. Cir. 2001), "the doctrine of equitable tolling is designed to prevent harsh and unjust results . . ."; *see also Spencer v. Sutton*, 239 F.3d 626, 630 (4th Cir. 2001) (". . . equitable tolling is available only in 'those rare instances where — due to circumstances external to the party's own conduct — it would be unconscionable to enforce the limitation period against the party and gross injustice would result.' "). Such a harsh result could occur where the defendant's bad faith delay causes the victims of his crimes to be denied restitution. Since it may also make sense to grant equitable tolling to the government as long as the delay is caused by the defendant in significant part for any reason, even if there is no bad faith involved, we turn to the second major legal issue before us. Having determined that equitable tolling can apply to 18 U.S.C. § 3664 (d)(5), under what circumstances should it apply?

## D.

In *United States v. Maung*, 267 F. 3d 1113 (11th Cir. 2001), the defendant was not responsible for the fact that the restitution hearing did not occur during the ninety-day period. The government argued that, nonetheless, the 90-day statutory period should be tolled because it would cause the defendant no prejudice. The Court rejected this argument, noting that there is no prejudice requirement in the statute. In analyzing the tolling question, the Court relied on the prescription that when the meaning of a statute is clear on its face, a court may only look to legislative history "if that plain meaning produces 'a result that is not just unwise but is clearly absurd.' " *Id.* at 1121. The Court then reasoned that a "strict [non-tollable] 90-day limit might produce an absurd result in cases where the defendant's own bad faith causes the entry of the order to be delayed beyond 90 days." *Id.* at 1122. In the facts before it, however, "[t]he delay . . . was not caused by obstruction or bad faith tactics of the defendant. By all accounts, the parties negotiated in good faith, but were unable to reach

agreement on the amount of restitution. There is no indication that the defendant was any more at fault for the delay than the government. In this situation, it is not plainly absurd to let the chips fall where the plain language of the statute indicates they should." *Id.*

Under the *Maung* Court's interpretation of § 3664(d)(5), equitable tolling will not apply when the fault for the delay is shared by the parties. It appears from the quoted language that the *Maung* Court would have found that equitable tolling did not apply even if the delay had been caused by the defendant, as long as he had not acted in bad faith. The Court left open the possibility, however, that equitable tolling would apply when the delay was caused by the defendant's bad faith, as in that situation alone a strict reading of the ninety-day limit "might produce an absurd result."[2]

The Court of Appeals for the Tenth Circuit came to a different conclusion in *United States v. Dando*, 287 F. 3d 1007 (10th Cir. 2002). In that case, the District Court had been prepared to enter the restitution order within the ninety-day period, but defense counsel twice asked that the order be delayed, the first time because his client was not present, and the second time to allow for an evidentiary hearing concerning the amount of restitution. After stating that the statute's time-bar provision is subject to equitable tolling, the *Dando* Court concluded that "the Government moved to file a restitution order well within the ninety-day time frame established by the statute" and "the delay was due to Defendant's request for a continuance and for an evidentiary hearing. Where a defendant's own conduct delayed the timely entry of a restitution order, the defendant cannot insist on strict conformity with the statute's time prescriptions." *Id.* at 1011. Under the *Dando* formula then, bad faith on the part of the defendant is not necessary; equitable tolling will apply as long as the delay was caused by the defendant, rather than by the government.

---

2. The Court went on to state: "For that reason, we are not willing to say that the 90-day limitation is inexorable and can never be equitably tolled. We have no occasion to decide that issue in this case, anyway." *Id.* at 1122.

The third case to address equitable tolling in this context is *United States v. Stevens*, 211 F.3d 1 (2d Cir. 2000). As in the other cases, the restitution order in *Stevens* came after the end of the 90-day period. In that case, however, the delay was caused by the defendant's bad faith behavior. The Court determined that the defendant "himself caused the extended delay. The restitution order could not be issued . . . because . . . '[the defendant] has been stonewalling from the beginning and [has continued] to stonewall' . . . and has been 'flouting the authority of the court' by concealing significant assets from the prosecutors. . . ." *Id.* at 4. The Court concluded that "to vacate the restitution order where the defendant himself ran out the 90-day clock would be to reward him for willful defiance of the court's orders." *Id.* at 5.

Having surveyed the extant caselaw, it is clear that, because the statute is designed to protect the victims of the crimes in question, equitable tolling should apply to situations in which the convicted individual's bad faith tactics caused the delay. This result is consistent with *Stevens* and *Dando*, and not inconsistent with *Maung*. We also conclude, because equitable tolling is generally available in situations in which, in its absence, there will be a harsh or unjust result, that even in the absence of any bad faith behavior the statute must be equitably tolled when the delay is caused in significant part by the defendant. The statute is designed to protect the interests of the defendant's victims, and injustice will result if the dictates of the statute can be avoided by a delay caused by the actions of the defendant, in bad faith or not. If the defendant played no significant part in causing the delay, however, equitable tolling will not be available.

In the case at bar, it is clear that there was no bad faith on the part of the defendants. Still, the defendants were, in significant part, the cause of the delay because their lawyers could not appear at, and moved to continue, the originally scheduled restitution hearing. Equitable tolling was therefore proper, and the District Court did not err when it tolled the ninety-day time limit.

The judgment of the District Court will be affirmed.

12

A True Copy:
　　　Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*